IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2015

**STATE OF TENNESSEE v. PLAISE EDWARD SPANGLER**

**Appeal from the Criminal Court for McMinn County**
**Nos. 12-CR-165, 12-CR-325     Andrew Mark Freiberg, Judge**

---

**No. E2014-01958-CCA-R3-CD-FILED-JULY 30, 2015**

---

The defendant, Plaise Edward Spangler, appeals the revocation of his probation, raising essentially the following issues:  whether the trial court abused its discretion by finding that the defendant violated the terms of his probation by failing to submit to a drug screen and failing to pay court costs and fees when neither failure was willful; whether the trial court erred by not considering all lesser alternative means to incarceration, including intensive drug rehabilitation by referral to a drug court; and whether the trial judge committed plain error by not sua sponte recusing himself because he had been the prosecutor in a number of the defendant's previous criminal cases.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Richard Hughes, District Public Defender; Steve Morgan (on appeal) and Kevin Miller and Abby Burke (at hearing), Assistant Public Defenders, for the appellant, Plaise Edward Spangler.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; R. Steven Bebb, District Attorney General; and Heather Higginbotham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 3, 2013, the defendant entered an Alford plea to possession of marijuana, possession of methamphetamine, and promoting the manufacture of methamphetamine in

exchange for an effective sentence of four years in the Department of Correction, suspended to supervised probation. Among the conditions of his probation were that he submit to random drug tests and pay a minimum of $75 per month toward his court costs and fees.

On August 6, 2014, the defendant's probation officer filed the probation violation report at issue in this case, which alleged that the defendant had violated his probation by refusing to submit to a random drug screen and failing to make any payments toward his $7,804.25 in costs and fees.

At the September 5, 2014 revocation hearing, J.M. Creech, the defendant's probation officer, testified that he filed his first probation violation warrant on the defendant on April 14, 2014, based on the defendant's having failed a drug test and having admitted to using marijuana. He said the defendant "was referred to Ms. Shaw for a drug assessment, and then missed three appointments at Hiwassee Mental Health and never reported back to probation after failing his drug screen in October." The defendant was convicted of that violation, revoked from probation, and reinstated to probation on May 16, 2014. He testified the instant probation violation warrant was based on the defendant's having refused to submit a urine sample when he reported to his office on July 30, 2014, and for having failed to make any payments toward his $7,804.25 in court costs and fees.

Mr. Creech testified that the defendant told him, when he failed to produce the urine sample, that he was suffering from a kidney infection. He said he allowed the defendant to go to the lobby to drink some water but told him not to leave the building and that leaving would result in an automatic failure. The defendant left anyway but came back. Mr. Creech was still going to allow the defendant to provide a specimen, but the defendant left a second time and did not return.

On cross-examination, Mr. Creech testified that he and the defendant went into the drug screen room "a few times" and that the defendant informed him he was attempting to produce a specimen. The defendant passed gas at one point, but Mr. Creech did not observe any fecal matter. Mr. Creech conceded that, to his knowledge, the defendant had no source of income during the course of his probation. He also acknowledged that the defendant, who admitted using marijuana when he previously failed the drug screen, never admitted using any intoxicants on July 30.

The defendant testified that during the course of his probation he lived with his mother, was unemployed without any source of income, and relied on his mother for all his needs. He said he was willing to provide a urine specimen on July 30 but was physically unable to do so. At the time, he believed he had a kidney infection, but a few

2

days later he learned he had suffered "some kind of spider bite that turned into MRSA or something like that, staph," which "brought [him] to [his] knees." When he was unable to produce a urine sample, he was told that he could go to the parking lot to get a twenty-ounce water bottle instead of "sitting at that water fountain and . . . drinking water." He, therefore, went outside, got his water bottle, drank five bottles of water, and then came back inside and tried again. The first time he tried, he passed gas, and the second time, he defecated on himself.[1] At that point, he felt humiliated, became angry, and left.

The defendant testified that he telephoned the probation supervisor on Monday morning, who told him to set up another appointment with Mr. Creech to provide his urine sample. He then telephoned Mr. Creech, who told him to call back on August 11. When he called that day, however, Mr. Creech told him to turn himself in. The defendant insisted that he tried to produce a specimen on July 30 and that had he been able to do so, he would have passed the drug test. The defendant admitted he had a drug problem, testifying that he "like[d] weed," which was "like a nerve medication" to him. He stated that he "probably could use" some kind of drug treatment and was willing to attend a drug treatment program as part of his reinstatement to probation.

On cross-examination, the defendant acknowledged he had never before considered drug treatment. On redirect, he testified that he felt as if he had finally "hit lower" than "rock bottom" and was ready to seek help for his drug addiction.

The trial court called as a witness Ms. Rhonda Cooley, the court clerk of McMinn County. The court directed her to research the defendant's criminal record during a court recess, and when she returned to the stand, she identified certified copies of the defendant's previous convictions and violations of probation, which were admitted as a collective exhibit to the hearing. The trial court noted that the defendant had successfully completed probationary sentences for some prior convictions, but had also been revoked from probation on at least three prior occasions.

At the conclusion of the hearing, the trial court found that the defendant had violated the terms of his probation by his failure to provide a drug screen and by his failure to pay court costs and fees. The court further found that "nearly all forms of alternative sentencing" had been "attempted repeatedly" but that the defendant had continued to reoffend. The court, therefore, revoked the defendant's probation and ordered that he serve his original sentence in the Department of Correction, with credit for time already served. Defense counsel pointed out that the defendant had never been sentenced to a drug rehabilitation program and requested that the court reconsider its

---

[1]The transcript reflects the defendant's testimony on this point as follows: "I farted the first time, and the second time I (indiscernible), not much, but my pants were to my ankles." In his brief, defense counsel states that the defendant used the slang term "sharted," which means to defecate on oneself.

3

ruling by referring the defendant to either Davidson or Morgan County Drug Court. The State responded by referencing Mr. Creech's testimony about the defendant's having missed three appointments at Hiwassee Mental Health Center, indicating that he had chosen not to take advantage of rehabilitative help. The trial court agreed with the State and reiterated its ruling. This appeal followed.

## ANALYSIS

### I.    Revocation of Probation and Reinstatement of Original Sentence

As his first two issues, the defendant contends that the trial court abused its discretion by revoking his probation and reinstating his original sentence. He argues that the evidence does not show that his failure to submit a urine sample or to pay court costs and fees was willful. In support, he cites his own testimony about his physical inability to urinate and the fact that he had no source of income during the period of his probation. He also asserts that the trial court abused its discretion by reinstating his original sentence without "even consider[ing] a referral to any community-based alternative to incarceration at either the Davidson or Morgan County Drug Court[.]" The State responds by arguing that the evidence does not preponderate against the trial court's finding that the defendant violated his probation by not submitting a urine sample and by not paying any money toward his court costs and fees. The State further argues that the court acted within its discretion by ordering the defendant to serve his sentence in confinement after reviewing the defendant's previous criminal history, which included previous failures at probation. We agree with the State.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2014). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)).

4

The trial court recognized that the defendant's failure to pay as a violation of probation had to be willful, rather than based on a mere inability to pay. See State v. Dye, 715 S.W.2d 36, 41 (Tenn. 1986). It noted, however, that in addition to the failure to pay, the defendant violated the terms of his probation by not submitting to a drug screen and by leaving the building without permission. In its ruling, the trial court specifically accredited the testimony of the defendant's probation officer over that of the defendant, finding Mr. Creech to be "a very honest and credible witness," while at the same time viewing the defendant's explanation for his failure to produce a urine sample and his failure to make any payments "with high skepticism." The trial court, thus, implicitly found that the defendant's failures to submit to a drug screen and to pay were both willful. We conclude, therefore, that the trial court did not abuse its discretion in revoking the defendant's probation.

We further conclude that the trial court acted within its discretion in ordering the defendant to serve his original sentence in incarceration. Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see also Tenn. Code Ann. §§ 40-35-310, -311(e), -308(c) (2014). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999); see also State v. Markquitton Sanders, No. M2010-02212-CCA-R3-CD, 2011 WL 4529655, at *2 (Tenn. Crim. App. Sept. 29, 2011), perm. app. denied (Tenn. Nov. 17, 2011). In addition to his failure to complete probation in previous cases, the defendant had already been revoked and reinstated to probation in the instant case. Moreover, he missed three meetings at a mental health facility after being referred for drug assessment. The trial court, thus, was well within its discretion in ordering the defendant to serve his original sentence in confinement.

## II. Recusal of Trial Judge

The defendant also contends that the trial court committed plain error "when it failed to disqualify itself from the case after discovering that it had been the prosecutor in eight judgments of conviction and three (3) orders violating probation used to determine [the defendant's] amenability to correction[.]" The State points out that there is nothing in the record to indicate that the trial judge knew or even suspected he had been the prosecutor in those previous cases. The State also points out that the judge was not a lawyer "in the matter in controversy" which would have required his recusal. See Tenn. Sup. Ct. R. 10, Canon 2.11(A)(6)(a).

By not raising this issue before the trial court, the defendant has waived appellate review, absent plain error. In order for us to find plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. Id. at 283.

We agree with the State that there is nothing in the record to indicate that anyone in the courtroom realized that the trial judge had been the prosecutor on the previous cases, no substantial right of the defendant was affected by the fact that the judge was the prosecutor in earlier cases, and consideration of the alleged error is not necessary to do substantial justice. See generally State v. Conway, 77 S.W.3d 213, 225 (Tenn. Crim. App. 2001); State v. Ernest Gentry Burton, No. M2008-00431-CCA-R3-CD, 2009 WL 2382284, at *9-11 (Tenn. Crim. App. Aug. 3, 2009), perm. app. denied (Tenn. Dec. 14, 2009). Accordingly, we conclude that there is no plain error in this case.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve his original sentence in confinement.

_____
ALAN E. GLENN, JUDGE

6